AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
| CHRISTOS BAGIOS | ) Case No. 11-6030-RSR |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __1999 to present__ in the county of __Broward__ in the __Southern__ District of __Florida and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 371 | unlawfully and knowingly conspired with others to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue, and one or more of such person committed any act to effect the object of the conspiracy |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Guy Ficco, Special Agent IRS-CI
Printed name and title

Sworn to before me and signed ~~in my presence.~~ over the telephone and by facsimile

Date: 1/26/11

City and state: Fort Lauderdale, Florida

_____
Judge's signature

Robin S. Rosenbaum, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

I, GUY FICCO, being duly sworn, depose and say:

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS"). I have been employed with the IRS since approximately 1996. My job duties include investigating tax fraud, including, among other crimes, conspiracies to defraud the United States. I have also participated in investigations that focus on the use of undeclared foreign bank accounts by United States taxpayers and other individuals who willfully conceal assets and income from the IRS.

2. The information in this affidavit is based on my personal knowledge, information provided to me by others, including other law enforcement officials and civilian witnesses, as well as my review of documents associated with the case. I am fully aware of the facts and circumstances concerning investigations into Swiss banks and Swiss bankers aiding and assisting United States taxpayers in committing tax fraud. I have participated in significant aspects of this investigation. In particular, I have reviewed: the Deferred Prosecution Agreement between the United States Department of Justice and UBS AG ("UBS"), a Swiss bank; statements of United States clients involved in Swiss banking tax fraud schemes; UBS bank records; and a memorandum memorializing an interview with Renzo Gadola on January 26, 2011, who was part of a team of UBS bankers including CHRISTOS BAGIOS who were engaged in an illegal cross-border tax evasion scheme involving U.S. taxpayers.

3. The information contained in this affidavit is submitted for the sole purpose of demonstrating probable cause to obtain a criminal complaint against CHRISTOS BAGIOS, for violating Title 18, United States Code, Section 371, conspiracy to defraud the United States. Because this affidavit is being submitted for the limited purpose of demonstrating probable

cause, it does not contain all of the information known to me and/or other law enforcement officers involved in this case.

### Duty to Report Worldwide Income and Foreign Bank Accounts

4. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for enforcing and administering the tax laws of the United States, and collecting taxes owed to the Treasury of the United States.

5. United States citizens, resident aliens, and legal permanent residents of the United States had an obligation to report to the IRS on the Schedule B of a U.S. Individual Income Tax Return, Form 1040, whether that individual had a financial interest in, or signature authority over, a financial account in a foreign country in a particular year by checking "Yes" or "No" in the appropriate box and identifying the country where the account was maintained. United States citizens and residents had an obligation to report all income earned from foreign bank accounts on the tax return.

6. United States citizens, resident aliens, and legal permanent residents of the United States who had a financial interest in, or signature authority over, one or more financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a particular year were required to file with the Department of the Treasury a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 (the "FBAR"). The FBAR for the applicable year was due by June 30 of the following year.

7. An "undeclared account" was a financial account owned by individuals subject to United States tax and maintained in a foreign country that has not been reported to the United States government on a tax return and an FBAR.

2

## UBS AG'S CROSS BORDER BANKING SCHEME[1]

8.      UBS, a corporation organized under the laws of Switzerland, directly and through its subsidiaries, operated a global financial services business. As one of the biggest banks in Switzerland and largest wealth managers in the world, UBS provided banking, wealth management, asset management and investment banking services, among other services, around the globe, including through branches located in the United States (including the Southern District of Florida).

9.      According to a Statement of Facts agreed to by UBS, beginning in at least 2000 and continuing until 2007, UBS, through certain private bankers and managers in the U.S. cross-border business, participated in a scheme to defraud the United States and its agency, the IRS, by actively assisting or otherwise facilitating a number of U.S. individual taxpayers in establishing accounts at UBS in a manner designed to conceal the U.S. taxpayers' ownership or beneficial interest in said accounts. In this regard, said private bankers and managers facilitated the creation of such accounts in the names of offshore companies, allowing such U.S. taxpayers to evade reporting requirements and to trade in securities as well as other financial transactions (including making loans for the benefit of, or other asset transfers directed by, the U.S. taxpayers, and using credit or debit cards linked to the offshore company accounts).

10.      According to a Statement of Facts agreed to by UBS, said private bankers and managers would actively assist or otherwise facilitate certain undeclared U.S. taxpayers, who such private bankers and managers knew or should have known were evading United States

---

[1] The information in this section was obtained from the Deferred Prosecution Agreement between the Department of Justice and UBS AG dated February 19, 2009.

taxes, by meeting with such clients in the United States and communicating with them via U.S. jurisdictional means on a regular and recurring basis with respect to their UBS undeclared accounts. This enabled the U.S. clients to conceal from the IRS the active trading of securities held in such accounts and/or the making of payments and/or asset transfers to or from such accounts.

11. According to a Statement of Facts agreed to by UBS, UBS managers authorized and encouraged private bankers to travel to the United States to solicit new clients and conduct banking for existing United States clients. UBS sponsored events in the United States where Swiss bankers met with U.S. clients, including Art Basel in Miami and the NASDAQ 100 tennis tournament in Miami.

12. According to a Statement of Facts agreed to by UBS, private bankers in UBS's U.S. cross-border business typically traveled to the United States with encrypted laptop computers and received training on how to avoid detection by U.S. authorities while traveling to the United States. UBS trained bankers traveling to the United States in techniques to avoid detection by United States law enforcement authorities, including training bankers to falsely state on customs forms that they were not traveling into the United States for business.

13. In or around September of 2007, UBS was notified that the Department of Justice was investigating its United States cross-border banking activities.

14. On February 18, 2009, UBS entered into a Deferred Prosecution Agreement ("DPA") with the U.S. Department of Justice ("DOJ") and a Consent Order with the U.S. Securities and Exchange Commission ("SEC"). As part of the DPA and Consent Order, UBS agreed to: pay a total of $780 million to the United States, $380 million representing

4

disgorgement of profits from maintaining the U.S. cross-border business and $400 million representing U.S. federal backup withholding tax required to be withheld by UBS, together with interest and penalties, and restitution for unpaid taxes associated with certain account relationships involving fraudulent sham and nominee offshore structures and otherwise as covered by the DPA; exit the U.S. cross-border banking business; and pursuant to an order issued by the Swiss Financial Market Supervisory Authority, transfer to the DOJ information regarding accounts of certain U.S. clients based on evidence that the clients had committed tax fraud.

## PARTIES, PERSONS, and ENTITIES

15. According to information that he provided to Customs and Border Protection on January 25, 2011, CHRISTOS BAGIOS was a citizen of Greece and resident of Switzerland. According to databases maintained by the Financial Industry Regulatory Authority, Inc. (FINRA), CHRISTOS BAGIOS was a registered investment advisor with the United States Securities and Exchange Commission. According to Renzo Gadola and UBS account records, from approximately 1999 through 2005, CHRISTOS BAGIOS was employed by UBS, and its predecessor Union Bank of Switzerland, as a private banker. According to information provided by Renzo Gadola, while at UBS, CHRISTOS BAGIOS had approximately 100 to 150 undeclared United States clients with total assets under management of approximately $400 million to $500 million. According to Gadola, United States clients of CHRISTOS BAGIOS's with undeclared accounts had to maintain a minimum balance of $1 million.

16. In an interview of Gadola conducted on January 26, 2011, and according the website of Credit Suisse Private Advisors AG ("CSPA"), from 2005 to 2008, CHRISTOS BAGIOS was employed by UBS Swiss Financial Advisors AG. According to the

5

CSPA web site, CSPA employed CHRISTOS BAGIOS as a Senior Relationship Manager and Head Relationship Management East Coast from February 2009 to the present.

17. Renzo Gadola ("Gadola"), an unindicted co-conspirator, is a Swiss citizen. According to databases maintained by FINRA, Gadola was a registered investment advisor with the United States Securities and Exchange Commission. According to a Statement of Facts agreed to by Gadola, from the late 1990's through approximately 2008, Gadola was a private banker and Executive Director in UBS's North America International business, which included the United States cross-border business. Gadola advised an IRS agent on January 26, 2011 that he and CHRISTOS BAGIOS were part of a team of UBS bankers who serviced hundreds of undeclared accounts at UBS owned and controlled by U.S. taxpayers. On December 22, 2010, following his arrest on November 8, 2010, Renzo Gadola pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. In that plea, Renzo Gadola admitted that he serviced hundreds of undeclared bank accounts while employed as a private banker at UBS.

18. According to UBS documents and a file maintained by the Department of Homeland Security, Bernard Goldstein (hereinafter "Goldstein") was a Canadian citizen and lawful permanent resident of the United States residing in Carlsbad, San Diego County, California. According to information provided by his return preparer, Goldstein owned and operated MG Export-Import, Inc., a California-based company that exported oil pipeline products to Russia. On November 16, 2010, Goldstein was indicted in the Southern District of California on one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371, five counts of making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1), and three

6

counts of willful failure to file a report of foreign bank and financial accounts in violation of 31 U.S.C. §§ 5314 and 5322(a).

## MANNER AND MEANS USED TO CARRY OUT THE CONSPIRACY

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

19.  According to the Statement of Facts entered into by UBS and according to information provided by Renzo Gadola, it was a part and an object of the conspiracy that CHRISTOS BAGIOS and others would and did market undeclared Swiss bank accounts and Swiss bank secrecy to wealthy United States clients who were interested in attempting to evade United States income taxes.

20.  According to the Statement of Facts entered into by UBS and according to information provided by Renzo Gadola, it was further a part of the conspiracy that CHRISTOS BAGIOS and others would and did travel to the United States to provide investment advice to United States clients and to conduct banking with United States clients. CHRISTOS BAGIOS and others would and did conduct banking with United States clients with undeclared accounts from Switzerland and elsewhere via mailings, emails, and telephone calls to and from the United States.

21.  According to the Statement of Facts entered into by UBS and according to information provided by Renzo Gadola, it was further a part of the conspiracy that CHRISTOS BAGIOS and others would and did assist United States clients in concealing assets and income from the United States government, including the IRS.

7

22. It was further a part of the conspiracy that CHRISTOS BAGIOS and others would and did invite United States clients with undeclared accounts to attend UBS marketing events at Art Basel in Miami, Florida.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed in the Southern District of Florida, and elsewhere:

### Bernard Goldstein

23. According to a Form A, Declaration on Opening an Account or Securities Account, maintained by UBS and produced pursuant to the DPA, which affiant has reviewed, on or about January 1992, Goldstein opened in his own name an account at UBS in Switzerland, for which he was the beneficial owner.

24. According to incorporation documents and related records maintained in UBS files, which affiant has reviewed, on or about October 23, 2000, CHRISTOS BAGIOS and Goldstein and their co-conspirators caused to be filed with the Republic of Panama, a known tax haven, Articles of Incorporation and related documents to establish Kasler Management Corp. ("Kasler"). Kasler was a sham bearer share corporation created for the purpose of hiding from the IRS Goldstein's ownership and interest in certain assets.

25. According to a Form A, Declaration on Opening an Account or Securities Account, maintained by UBS and produced pursuant to the DPA, which affiant has reviewed, in or about December 2000, CHRISTOS BAGIOS, Goldstein and their co-conspirators established a bank account at UBS in Switzerland in the name of Kasler. Goldstein was the beneficial owner of the Kasler account.

8

26.     According to records maintained by UBS and produced pursuant to the DPA, which affiant has reviewed, in or about December 2000, CHRISTOS BAGIOS, Goldstein and their co-conspirators caused UBS to maintain in its records an IRS Form W-8BEN that concealed Goldstein's beneficial ownership of the UBS account and falsely claimed the account was not subject to United States taxation.

27.     A letter in UBS files, which affiant has reviewed, indicates that on or about May 29, 2001, CHRISTOS BAGIOS assisted Goldstein with the transfer of approximately $802,000 from Goldstein's UBS account in his own name to his Kasler account.

28.     According to correspondence maintained by UBS in its files, which affiant has reviewed, in or about July 2002, CHRISTOS BAGIOS assisted Goldstein with the transfer of assets from a separate pre-existing account at UBS Cayman Islands Ltd. to Goldstein's Kasler account.

29.     According to records maintained by UBS, which affiant has reviewed, on or about September 19, 2003, Goldstein caused to be withdrawn approximately $15,000 in cash from the Kasler account.

30.     According to IRS records, which affiant has reviewed, on or about September 8, 2008, Goldstein filed with the IRS a false Form 1040 Individual Income Tax Return for tax year 2007, which failed to report income earned from bank accounts at UBS and failed to report on Schedule B that he had an interest in, or signature authority over, a financial account in a foreign country.

## Other Clients

31. According to a sworn statement provided to the IRS by "C.L.", a U.S. taxpayer known to the Government who maintained an undeclared account at UBS, in or about 1999 and again in or about 2000, CHRISTOS BAGIOS met with "C.L." in a hotel in San Francisco, California to discuss the undeclared account. On or about July 16, 2002, CHRISTOS BAGIOS again met with "C.L." at a coffee shop in a mall in Daly City, California to discuss the undeclared account.

32. According to a sworn statement provided to the IRS by "F.P.", a U.S. taxpayer known to the Government who maintained an undeclared account at UBS, on or about July 29, 2004, CHRISTOS BAGIOS met in Newport Beach, California, with "F.P." to discuss the undeclared account.

33. According to IRS records, which affiant has reviewed, on or about April 15, 2005, a U.S. taxpayer with an undeclared account at UBS serviced by an unindicted co-conspirator filed his United States Individual Income Tax Return, Form 1040, for the 2004 tax year, listing an address in Broward County, Florida that fraudulently omitted income earned from off-shore assets and falsely represented that the taxpayer did not have an interest in, and a signature and other authority over, financial accounts located in a foreign country.

34. According to a sworn statement provided to the IRS by "J.C.", a U.S. taxpayer known to the Government who maintained an undeclared account at UBS, on or about May of 2005, CHRISTOS BAGIOS met in California with "J.C." to discuss the undeclared account.

35. According to a statement of facts agreed to by Gadola, on or about November 6, 2010, in Miami, Florida, Gadola met with a U.S. taxpayer that formerly held an undeclared account at UBS in order to discourage the taxpayer from disclosing to the IRS his beneficial ownership of another undeclared Swiss account.

In violation of Title 18, United States Code, Section 371.

*Guy Ficco*
GUY FICCO
SPECIAL AGENT

Sworn to and subsribed before me over the telephone and by facsimile.

*Robin S. Rosenbaum*
1/26/11

11